## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LAMONT VAUGHN,** | **Civil Action No.  21-15194 (FLW)** |
| **Plaintiff,** | |
| v. | **MEMORANDUM OPINION** |
| **MAGISTRATE JUDGE EDWARD KIEL, et al.,** | |
| **Defendants.** | |

Plaintiff Lamont Vaughn, who is currently confined at Essex County Correctional Facility, in Newark, New Jersey, seeks to bring this civil action *in forma pauperis*, without prepayment of fees or security, asserting claims pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).[1]  The Court previously administratively terminated this case because Plaintiff did not submit an application to proceed *in forma pauperis* ("IFP application"); Plaintiff subsequently submitted the required IFP application. *See* ECF Nos. 2-3. As this time, the Court will reopen this matter, grant the IFP application, ECF No. 3, and screen the Complaint for dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

Federal law requires the Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit.  *See* 28 U.S.C. § 1915(e)(2)(B).  "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a

---

[1] The Complaint refers to *Bivens* and § 1983; however, Plaintiff names only federal actors and the United States as Defendants, and the Court does not construe him to raise any § 1983 claims, which applies to state and local government actors.

complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

Plaintiff has sued Magistrate Judge Kiel, Margaret Ann Mahoney ("AUSA Mahoney"), Patrick Hattersley of the United States Probation Office ("Probation Officer Hattersley"), and the United States of America ("United States"), alleging violations of his civil rights in connection with the delay of his preliminary hearing in his then-pending criminal case in this District. *See* USA v. Vaughn, Crim. No. 20-803 (KM).  Plaintiff's criminal matter was assigned to the Honorable Kevin McNulty ("Judge McNulty"), and the Court the relies on Judge McNulty's decisions dated October 2, 2020, and October 5, 2020[2] for the relevant factual and legal background:

> . . . .On August 30, 2020, a criminal complaint was filed, charging the defendant with possession with intent to distribute oxycodone, in violation of 21 U.S.C. § 841(a)(1) and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). (DE 1) On August 17, 2020, he had an initial appearance before Magistrate Judge Waldor. (DE 3) She entered an order of temporary detention. (DE 6) On August 20, 2020, he had a detention hearing before Magistrate Judge Waldor, who entered an order of pretrial detention. (DE 8)
>
> The defendant declined to waive a preliminary hearing. Because the defendant is in custody, Fed. R. Crim. P. 5.1(d) requires that a preliminary hearing ordinarily be held within 14 days after arrest. Accordingly, Judge Waldor scheduled a preliminary hearing for August 28, 2020.[3]

---

[2] Judge McNulty's decisions are largely consistent with the allegations in Plaintiff's Complaint. To the extent Plaintiff's allegations differ, the Court notes the differences and credits Plaintiff's well-pleaded allegations for screening purposes only.

[3] According to the criminal docket, Judge Kiel scheduled the preliminary hearing. In a text order dated October 5, 2020, Judge McNulty noted that his decision dated October 2, 2020, stated in error that Judge Waldor scheduled the hearing:

> TEXT ORDER as to LAMONT VAUGHN: In the opinion of October 2, 2020 (20cr803 DE 27; 20cr782 DE 7) Judge Waldor scheduled a preliminary hearing at p. 2, lines 5-6, should read

On August 24, 2020, the government filed a motion to extend the deadline for a preliminary hearing. Such an extension is permitted, but "the magistrate may extend the time limits only on a showing that extraordinary circumstances exist and justice requires the delay." Fed. R. Crim. P. 5.1(d); *see also* 18 U.S.C. § 3060(c) ("the judge or magistrate judge may extend the time limits only on a showing that extraordinary circumstances exist and justice requires the delay"). As "extraordinary circumstances," the government cited such factors as the COVID-19 pandemic and the attendant difficulties, which are well known to all; the state of emergency declared in New Jersey, requiring, e.g., that citizens shelter in place; and the standing orders of this Court, suspending certain deadlines under the Speedy Trial Act, including the 30-day deadline to obtain an indictment under 18 U.S.C. § 3161(b).

The government offered generalities about the difficulties of travel, unavailability of those responsible for child care, limitations on prison visits, the health risks of in-person proceedings, and difficulties in "bringing in witnesses to prepare for and testify at a preliminary hearing." It offered no specifics about any particular witness who would be unavailable or any particular person whose child-care responsibilities would bar an appearance before but not after August 28, 2020. Nor did the government address the obvious alternative procedure of conducting proceedings by video—as has been done in many cases, including this very case.

The only specific basis for an adjournment cited by the government was the inability to obtain a grand jury quorum. "Ordinarily," said the government, "this would be a case the government would seek to indict in order to protect witness statements in open court, and to avoid the possible identification of such witnesses at this early stage of the litigation However, COVID-19 pandemic and the inability to obtain a grand jury quorum has prevented the government from proceeding by indictment by August 28, 2020. However, the Government anticipated being able to present the case to the Grand Jury on September 11, 2020." (DE 9 at 4)

The Magistrate Judge accepted the lack of a grand jury quorum as the primary basis to grant an extension of the preliminary hearing deadline:

> 4. The government has proffered that the COVID-
> 19 pandemic and resulting government restrictions
> have prevented it from obtaining a grand jury

Judge Kiel scheduled a preliminary hearing. So Ordered by Judge Kevin McNulty on 10/5/2020. (nic, ) (Entered: 10/05/2020)[.]

3

> quorum so it can present the charges to a grand
> jury....
>
> 6. The COVID-19 pandemic continues and social-
> distancing regulations have prevented a quorum of
> the grand jury.... Extraordinary circumstances exist
> and the interests of justice would be served by
> extending the time for a preliminary hearing.
>
> (Order of Magistrate Judge dated Aug. 27, 2020, DE 12) That
> order adjourned the deadline for a preliminary hearing until
> September 18, 2020. (Id.).
>
> On August 28, 2020, the defendant filed an appeal from the
> Magistrate Judge's order extending the preliminary hearing date.
> (DE 15).

*United States v. Vaughn*, 492 F.Supp.3d 336, 339–40 (D.N.J. 2020).

In his decision dated October 2, 2020, Judge McNulty determined that the Magistrate

Judge Kiel granted the extension in error, as the government had made no specific showing that a

preliminary hearing, as opposed to an indictment, could not be obtained before August 28, 2020;

however, Judge McNulty also determined that dismissal of the indictment was not required

because the indictment cured the defect in the preliminary hearing process. *See id.* at 341-344.

After issuing that decision, however, Judge McNulty "received a letter from the First

Assistant U.S. Attorney, conceding that the basis on which the government had obtained the

adjournment of the preliminary hearing date was incorrect." *United States v. Vaughn*, Crim. No.

20-803 (KM), Crim. No. 20-782, 2020 WL 5902614, at *1 (D.N.J. Oct. 5, 2020).  That letter

read in relevant part:

> The United States apologizes for failing to submit the letter the
> Court requested before it issued today's memorandum opinion and
> order. The reason for the delay is that, in reviewing the letter
> submitted in support of the application to extend the deadline for
> conducting a preliminary hearing in this case, Docket Entry ["DE"]
> 9, the Government grew concerned that certain statements in that
> letter were inaccurate or misleading. That required a careful review
> of the letter against the relevant facts. Having conducted that
> review, the Government has concluded that its concerns were well-
> founded. We are reassigning this case to a different Assistant U.S.

Attorney and taking other remedial measures, as explained in greater detail below.

As Your Honor is aware, and as detailed in the opinion, after Defendant Lamont Vaughn stated at his Wednesday, August 20 detention hearing that he wanted a preliminary hearing, DE12, ¶ 2, the Honorable Edward S. Kiel, U.S.M.J., scheduled a preliminary hearing for Friday, August 28, at 11:00 a.m. On August 24, the Government requested an extension under Federal Rule of Criminal Procedure 5.1(d) and asked Judge Kiel to adjourn the hearing until after September 11, 2020. DE9, at 4. After considering the Government's letter and Vaughn's opposition, DE10, Judge Kiel granted the extension and adjourned the preliminary hearing until September 18 at 10:00 a.m., DE12. Relying on the Government's letter, Judge Kiel found "[e]xtraordinary circumstances exist[ed] and the interests of justice would be served by extending the time for a preliminary hearing" because the "COVID-19 pandemic continues and social-distancing regulations have prevented a quorum of the grand jury." DE12, ¶ 6.

Regrettably, this Rule 5.1(d) extension request never should have been made, and certainly not on the grounds advanced in the Government's letter. To begin with, the letter stated that the "COVID-19 pandemic and the inability to obtain a grand jury quorum has prevented the government from proceeding by indictment by August 28, 2020." DE9, at p.4. As of the date of the letter, that was both incorrect and misleading. Newark grand juries were expected to (and in fact did) form quorums on Thursday, August 27 and Friday, August 28. Had the letter expressly acknowledged that Newark grand juries were convening on August 27 and August 28, Judge Kiel likely would not have granted the extension. In addition, the letter represented that the Government "anticipate[d] being able to present this case to the Grand Jury on September 11, 2020." *Id.* This representation implied that no grand jury quorum could be reached prior to that date. Had Judge Kiel known that a Newark grand jury was expected to (and in fact did) form a quorum on September 2, he likely would not have granted an extension until September 18.

In addition, relying on prior filings and resulting extension orders in a handful of cases during March-May 2020, the Government's letter focused on how the COVID-19 pandemic was impeding judicial proceedings and grand jury investigations generally. But as Your Honor correctly noted in the opinion, circumstances have changed since then. Most notably, per the plan approved by the Court, grand juries have been meeting approximately twice a week since May 29, 2020. And stay-at-home, travel and public gathering

> restrictions in New Jersey were easing during the summer. So the letter should have focused on the specific problems, if any, the COVID-19 pandemic was posing in August and expected to pose in September for this case in particular.
>
> For example, the letter should have explained whether the pandemic truly was preventing the Government from locating fact witnesses and obtaining other evidence necessary to prepare for the preliminary hearing. The letter also should have acknowledged that Rule 5 "does not allow the [preliminary] hearing date to be" extended merely "to accommodate the pace of the grand jury investigation." *United States v. Gurary*, 793 F.2d 468, 472 (2d Cir. 1986). And the letter should have acknowledged that where, as here, the defendant does not consent to extending RuIe 5.l(c)'s time limits, Rule 5.1(d) imposes "far more rigorous criteria" than "the somewhat flexible 'ends of justice standard' under" the Speedy Trial Act. Gurary, 793 F.2d at 473.

*Vaughn*, 2020 WL 5902614, at *1–2 (citing Gov't letter, dated October 2, 2020, DE 27).

In a decision dated October 5, 2020, Judge McNulty determined that "the government led the Magistrate Judge into error by misstating the facts" and further held that the appropriate remedy was the dismissal of the indictment without prejudice:

> I can conceive of no effective sanction short of granting the remedy provided for in 18 U.S.C. § 3060(d): dismissal of the Indictment without prejudice to further criminal proceedings, and vacating the order of detention (DE 8) to the extent it is based on the criminal charges in this case. Requiring the government, at a minimum, to start over seems just and proportionate; it should not enjoy any advantage as a result of its conduct, which preceded the 14-day deadline to indict, which should never have been extended in the first place.

*Id.* at *3.  Because Plaintiff was also held on violations of supervised release, which were based in part on the criminal charges that were set aside, Judge McNulty also ordered a new bail hearing no later than October 6, 2020.  *See id.*

Plaintiff filed the instant Complaint on or about August 2, 2021.  *See* ECF No. 1.  As noted above, he has sued Judge Kiel, AUSA Mahoney, Probation Officer Hattersley, and the United States.

6

In his Complaint, Plaintiff alleges that Magistrate Judge Kiel violated his statutory and/or constitutional rights by granting the government's motion to delay his preliminary hearing based on the misrepresentations made by AUSA Mahoney in her letter.  Complaint at 3-5.  According to Plaintiff, Judge Kiel granted the two-week postponement over Plaintiff's objections and his requests for reconsideration.  *See id.*  Judge Kiel allegedly did not do his "due diligence" in confirming whether AUSA Mahoney's representations were accurate, and Plaintiff implies that AUSA Mahoney sent the extension to Judge Kiel, rather than to Judge Waldor, because he was a "friend" who would "rubber stamp" the request.  *See id.* at 6-7.

Plaintiff further alleges that AUSA Mahoney has a "personal vendetta" against him arising out of a prior matter adjudicated by the Honorable Jose L. Linares, in which Plaintiff was successful as a pro se litigant, and that he brought this issue to the attention of Judge Kiel, and later, to Judge McNulty.  *See* Complaint generally.  He further alleges that AUSA Mahoney intentionally lied about the unavailability of the grand jury quorum in order to keep him incarcerated and violate his rights to a preliminary hearing.  *See id.*  He further asserts that AUSA Mahoney sought to delay the hearing in order to bypass the presentment of probable cause at the preliminary hearing and secure a grand jury indictment without providing Plaintiff a preliminary hearing.  *See id.*  Plaintiff also vaguely alleges that AUSA Mahoney had insufficient evidence to meet the probable cause standard at the preliminary hearing, but does not provide facts showing why probable cause was lacking.  *See id.* at 6.

Plaintiff alleges that Probation Officer Hattersley informed Plaintiff about AUSA Mahoney's vendetta against him and conspired with AUSA Mahoney to charge Plaintiff with the underlying charges and the technical violations of supervised release.  *See* id. at 7-9.  With respect to the underlying charges, Plaintiff asserts that the Irvington Police Department lacked

probable cause to arrest him, but he does not provide any facts to support this bare allegation.[4] *See id.* at 7.

The Court construes Plaintiff to assert violations of his civil rights under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). "*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980). Though more limited, a *Bivens* action is "the federal analog" to suits brought against state officials under 42 U.S.C. § 1983.[5] *Hartman v. Moore*, 547 U.S. 250, 255 (2006) (citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999)).

From the outset, the United States is not subject to suit for constitutional torts, including claims Plaintiff seeks to raise and is entitled to absolute sovereign immunity in this matter. *See, e.g., F.D.I.C. v. Meyer*, 510 U.S. 471, 476–77, 484–85 (1994) (the United States is immune from

---

[4] Plaintiff also does not identify any members of the Irvington Police Department as Defendants and the Court does not consider him to assert any civil rights claims against them, which would arise under § 1983.

[5] Congress established a damages remedy under 42 U.S.C. § 1983 with respect to state officials for constitutional violations, but it did not enact a corresponding statute with respect to federal officials. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). In *Bivens*, however, the Supreme Court of the United States recognized an implied right of action for damages against federal officials who have violated a person's Fourth Amendment right to be free from unreasonable searches and seizures. *Id.* at 392. The Supreme Court has extended *Bivens* to other contexts twice. First, in *Davis v. Passman*, 442 U.S. 228 (1979), it held that an administrative assistant fired by a congressman had a *Bivens* remedy for gender discrimination under the Fifth Amendment's Due Process Clause. *Id.* at 248–49. Then, in *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court permitted a *Bivens* remedy against federal prison officials for failure to provide adequate medical treatment for a prisoner's asthma under the Eighth Amendment's Cruel and Unusual Punishment Clause. *Id.* at 19. "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855. Over the years that followed, the Supreme Court "consistently refused to expand *Bivens* actions beyond these three specific contexts." *Mack v. Yost*, 968 F.3d 311, 318 (3d Cir. 2020). The Court need not reach the issue of whether *Bivens* should be extended to the context here, as it will dismiss the Complaint on other grounds.

suit for constitutional torts, and *Bivens* provides no cause of action against the United States or its agencies); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949) (sovereign immunity bars suit against the United States either for damages or for injunctive relief requiring government action); *United States v. Rural Elec. Convenience Co-op. Co.*, 922 F.2d 429, 434 (7th Cir. 1991) (sovereign immunity bars suits seeking damages or coercive injunctive relief).  As such, Plaintiff's *Bivens* claims against the United States are dismissed with prejudice.

Judge Kiel is plainly entitled to absolute judicial immunity for extending the preliminary hearing deadline, over Plaintiff's objections, based on the written representations of AUSA Mahoney.  *See, e.g.*, *Kwasnik v. Leblon*, 228 F. App'x 238, 243 (3d Cir. 2007) (judges acting in the performance of their duties are absolutely immune from suit, and will be subject to liability only when they act "in the clear absence of all jurisdiction"); *see also Mireles v. Waco*, 502 U.S. 9, 12 (1991).  Judicial immunity is extremely broad.  "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"  *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (citation omitted).  As explained by Judge McNulty, Magistrate Judge Kiel's decision amounted to legal error, which is protected by judicial immunity.  Plaintiff's allegations that Judge Kiel "rubberstamped" AUSA Mahoney's application for an extension likewise do not deprive him of immunity because Judge Kiel plainly had jurisdiction to grant the extension.[6]  Thus, Plaintiff's claims against Judge Kiel premised on his judicial acts are dismissed with prejudice on the basis of judicial immunity.

---

[6] Moreover, the docket and Judge McNulty's text Order reflects that Judge Kiel scheduled the preliminary hearing; as such, Plaintiff's allegations that AUSA Mahoney should not have sent request to extend the deadline to Judge Kiel appears to be unfounded.

Leave to amend is denied for all *Bivens* claims against the United States as well as all claims arising from Judge Kiel's judicial acts within his jurisdiction.  Amendment of such claims would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

The Court next addresses the *Bivens* claims against AUSA Mahoney and Probation Officer Hattersley.  Plaintiff alternately asserts that these Defendants violated his statutory and/or constitutional rights to a preliminary hearing.  Because Plaintiff has filed a *Bivens* action, the Court liberally construes Plaintiff to assert that AUSA Mahoney violated his right to procedural due process in his criminal case by improperly seeking to delay his preliminary hearing and making false representations to the Court based on her personal animosity toward Plaintiff and to bypass the initial probable cause hearing.  The Court further construes Plaintiff to allege that Probation Officer Hattersley conspired with AUSA Mahoney to deprive him of the preliminary hearing, knowing that she had a vendetta against Plaintiff.

Plaintiff's procedural due process claim fails because he has no constitutional right to a preliminary hearing where he has been indicted by a grand jury.  It is well-established that "'the purpose of a preliminary hearing is to afford an arrested person a prompt determination as to whether there is probable cause to hold him for grand jury action . . . . *This purpose is served, and the hearing rendered unnecessary, by the return of an indictment.*" (emphasis in original). *U.S. v. Dorsey*, 462 F.2d 361, 363 (3d Cir 1972) (citing *United States v. Conway*, 415 F.2d 158 (3d Cir. 1969)); *see also Jaben v. United States*, 381 U.S. 214, 220 (1965) ("Furthermore, we think that the Government must proceed through the further steps of the complaint procedure by affording the defendant a preliminary hearing as required by Rule 5 [Federal Rules of Criminal Procedure], *unless before the preliminary hearing is held, the grand jury supersedes the complaint procedure by returning an indictment*. . . .") (emphasis added).  Thus, "although the

10

right to a preliminary examination is embodied in the United States Code and the Rules of Criminal Procedure, the right is not constitutional." U*.S. v. Aranda-Hernandez*, 95 F.3d 977, 979–80 (10th Cir. 1996) (citing *Snow v. State of Oklahoma*, 489 F.2d 278, 279 (10th Cir. 1973)). The Third Circuit has likewise held that there is no constitutional right to a preliminary hearing, *e.g., United States v. Farries*, 459 F.2d 1057, 1062 (3d Cir. 1972); *see also*. *U.S. v. Barone*, 311 F. Supp. 496, 498 (D.C. Pa. 1970) ("Rule 5 does not vest a defendant with a constitutional right to a preliminary examination. The law only requires that a defendant be granted a preliminary hearing before a Commissioner, or that the grand jury return an indictment against him."); *U.S. v. Simon*, 510 F. Supp. 232, 235 (D.C. Pa. 1981) (explaining same).

As explained by the Second Circuit, "the provision of Rule 5 that dispenses with a preliminary hearing when an indictment is returned before the hearing date is not a license to the Government or to the District Court to postpone a preliminary hearing for whatever length of time may be justified to secure the return of an indictment."[7] *U.S. v. Gurary*, 793 F.2d 468, 472 (2d Cir. 1986). Here, that delay, even if improperly, was short, and Plaintiff was subsequently indicted by the grand jury. Moreover, upon learning of the misleading nature of the letter submitted in support of the continuance, Judge McNulty dismissed the indictment without prejudice and ordered a new bail hearing. Plaintiff received the relief he was due under 18 U.S.C. § 3060(d), and the short delay in obtaining a probable cause determination did not violate

---

[7] As noted by Judge McNulty, in *U.S. v. Milano*, 443 F.2d 1022, 1025 (10th Cir. 1971), the Tenth Circuit has held that "[a]bsent evidence of deliberate prosecutorial connivance to deprive a person of a preliminary hearing by delay until after indictment, as to which we express no opinion, a defendant is not entitled to a new trial even if the hearing were improperly delayed." The Tenth Circuit expressed no opinion about whether prosecutorial misconduct in delaying a preliminary hearing would require a new trial, and the decision arose in the criminal context, not, as here, in a *Bivens* action for damages. As such, *Milano* has no bearing on whether Plaintiff can bring a *Bivens* claim in connection with the denial of his preliminary hearing.

his constitutional rights.  As such, Plaintiff's *Bivens* claims based on the denial of a preliminary hearing is dismissed for failure to state a claim for relief as to AUSA Mahoney and Probation Officer Hattersley.

Although the gravamen of Plaintiff's *Bivens* action, as currently drafted, is the denial of the preliminary hearing, it is possible that he seeks to assert claims for malicious prosecution or malicious abuse of process against AUSA Mahoney and/or Probation Officer Hattersley.  As explained below, even if the Court were to construe one or both of these claims for relief against the remaining Defendants, Plaintiff's Complaint contains insufficient facts to state a claim for relief under either theory.

"To prove malicious prosecution [when the claim is under the Fourth Amendment] ... a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003); *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009). In order for plaintiff to prevail on his malicious prosecution claim under the Fourth Amendment, he must satisfy each of the five elements.  *Kossler*, 564 F.3d at 186.  Moreover, in order to meet the favorable termination element, plaintiff is required to allege that he is innocent of the charges and to allege that "the circumstances-both the offenses as stated in the statute and the underlying facts of the case-indicate that the judgment as a whole" reflects his innocence of the stated charges.  *See Kossler*, 564 F.3d at 188.

Here, Plaintiff has not sufficiently alleged in his Complaint that the federal criminal proceeding was initiated without probable cause. According to Plaintiff, he was arrested by members of the Irvington Police Department after a "'wellness check' turned into something much more." Complaint at 1. He vaguely alleges that the federal charges were instigated by AUSA Mahoney with the assistance of Probation Officer Hattersley, and that the federal charges "mirrored" the state charges, *see id.* 9, but he says little else about why the state or federal authorities lacked probable cause to arrest him on the drug and gun charges. *See* id. at 6-7. Moreover, although the criminal charges were dismissed without prejudice by Judge McNulty, Plaintiff has not provided sufficient facts to suggest that he is innocent of those charges, as required to maintain a malicious prosecution action. As such, even if the Court were to construe a malicious prosecution claim, Plaintiff would fail to state a claim for relief.

Alternately, Plaintiff may be attempting to assert a claim for malicious abuse of process. A "claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'" *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989) (quoting *Jennings v. Shuman*, 567 F.2d 1213, 1217 (3d Cir. 1977)). "Cognizable injury for abuse of process is limited to the harm caused by the misuse of process, and does not include harm (such as conviction and confinement) resulting from that process's being carried through to its lawful conclusion." *Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994). To establish abuse of process, "there must be some proof of a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of [the] process." *Ference v. Twp. of Hamilton*, 538 F. Supp.2d 785, 798 (D.N.J. 2008) (citations and internal quotation marks omitted). Plaintiff has not provided sufficient facts to support an abuse of

process claim either because he has not conceded the legitimacy of his prosecution or clearly

identified the act or threat that constitutes the abuse of process.

At this time, the Court will dismiss the Complaint in its entirety pursuant to the Court's

screening authority under 28 U.S.C. § 1915(e)(2)(B).  The Court will provide Plaintiff with leave

to submit an Amended Complaint within 45 days with respect to his *Bivens* claims against

AUSA Mahoney and Hattersley.  The *Bivens* claims against Magistrate Judge Kiel—to the extent

they arise out of judicial acts within his jurisdiction—are dismissed with prejudice on the basis

of judicial immunity.  The *Bivens* claims against the United States are likewise dismissed with

prejudice on the basis of sovereign immunity.  An appropriate Order follows.


Dated: 3/2/2022


                                        /s/ Freda L. Wolfson
                                        Freda L. Wolfson
                                        U.S. Chief District Judge

14